NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNION OF ORTHODOX JEWISH CONGREGATIONS OF AMERICA, | : : : : | |
| Plaintiff, | : : | **OPINION** |
| v. | : : : | Civ. A. No. 05-4605 (WHW) |
| FLEET TECHNOLOGIES, LLC, MARK LOMAKIN, NINA LOMAKIN, TONY LOMAKIN and PURE SPRING WATER CO., LLC, | : : : : : : | |
| Defendants. | : : | |

**Walls, Senior District Judge**

Plaintiff Union of Orthodox Jewish Congregations of America ("Orthodox Union") moves for summary judgment against defendant Tony Lomakin pursuant to Federal Rules of Civil Procedure 56 and for entry of final judgment by default against defendants Fleet Technologies, LLC ("Fleet") and Pure Spring Water, LLC ("Pure Spring") pursuant to Federal Rules of Civil Procedure 55(b)(2). This motion is decided without oral argument pursuant to Federal Rules Civil Procedure 78. Union Orthodox's motion for final judgment of default against Fleet and Pure Spring and its motion for summary judgment against Tony Lomakin are granted.

**BACKGROUND**

This matter is, in essence, a continuation of an earlier action that Orthodox Union filed against Fleet. On July 15, 2004, Orthodox Union filed a legal action entitled <u>Union of Orthodox</u>

**NOT FOR PUBLICATION**

<u>Jewish Congregations of America v. Fleet Technologies, LLC</u>, Civ. A. No. 04-3353 (WHW) (Jul. 15, 2004) ("Orthodox Union I") alleging claims of federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), et seq. as well as claims under common law and New Jersey statutory law.  (Declaration of Lewis Cohn (Dkt. Entry No. 48, filed Oct. 31, 2007) ("Cohn's Decl.").)  Orthodox Union's infringement claims were based on its sole and exclusive ownership of the kosher certification mark OU (the "OU mark") that it had previously licensed to Fleet.  Orthodox Union claimed that Fleet had misused the OU mark without authorization on products beyond the scope of its license with Orthodox Union.  (Cohn Decl. ¶ 21.)

      Because Fleet failed to respond to the Complaint in <u>Orthodox Union I</u>, this Court entered a Final Judgment by Default granting permanent injunction, statutory damages, and attorneys fees and costs in favor of Orthodox Union and against Fleet.  <u>See</u> <u>Union Orthodox I</u>, Final Judgment (Dkt. Entry No. 6, Entered Jan. 24, 2005).  In addition to various forms of permanent injunctive relief, Orthodox Union was awarded statutory damages against Fleet of $100,000 in accordance with 15 U.S.C. § 1117(c)(2) of the Lanham Act.  <u>Id.</u> at ¶ 1(c).  Pursuant to paragraph 1(d) of the Judgment, Orthodox Union was also awarded attorneys' fees and costs of $17,705.95 against Fleet in accordance with 15 U.S.C. § 1117(b).  <u>Id.</u> at ¶ 1(d).

      The Judgment entered in favor of Union Orthodox remained unsatisfied because defendant Tony Lomakin failed to abide by an Order for Supplementary Relief in Aid of Judgment entered by this Court and did not attend a deposition scheduled by that order to ascertain assets belonging to Fleet that could be used to satisfy the Judgment.  <u>See</u> Complaint in

**NOT FOR PUBLICATION**

<u>Union of Orthodox Jewish Congregations of America v. Fleet Technologies, LLC</u>, Civ. A. No. 05-4605 at ¶¶ 61-68 (WHW) (Sept. 21, 2005) ("Compl." in "Orthodox Union II").  When Orthodox Union obtained an appointment of a detective from the Essex County (N.J.) Sheriff's Office to execute on Fleet's assets pursuant to a writ of execution issued by this Court, the detective was denied access to Fleet's place of business in Fairfield, New Jersey and was advised that Fleet was "unknown at this address."  <u>See</u> Compl. at ¶¶ 51-60.

Upon information and belief, Orthodox Union learned that the Lomakins had terminated Fleet's operations and had transferred its assets to Pure Spring, a separate entity that they operated in the same line of business from the same address in Fairfield, New Jersey.  <u>See id.</u> Orthodox Union also learned that the Lomakins were distributing under the name of Pure Spring bearing the OU mark without authorization from Orthodox Union.  (Ex. 8 to Cohn Decl.)

Orthodox Union commenced the second case against Fleet, Pure Spring and the Lomakins on Sept. 21, 2005.  <u>See</u> <u>Orthodox Union II</u>.  After filing an answer and engaging in discovery on behalf of the Defendants, defense counsel moved to withdraw as counsel for failure to receive payment of his legal fees from Defendants, which this Court granted.  <u>See</u> Letter Order Granting Defense Counsel's Motion to Withdraw (Dkt. Entry No. 29, Issued Nov. 6, 2006). Defendants have failed to respond to numerous discovery obligations.  On Nov. 27, 2006, after Pure Spring failed to retain counsel as required by the November 6, 2006 Order, this Court struck Pure Spring's pleadings and entered default against it.  <u>See</u>  Order Entering Default Against Pure Spring (Dkt. Entry No. 31, Issued Nov. 27, 2006).

**NOT FOR PUBLICATION**

On September 14, 2007, defendants Mark and Nina Lomakin filed for bankruptcy. (Ex. 20 to Cohn Decl.) As a result, defendant Tony Lomakin remains as the only "active" defendant; the Court had entered default against Fleet and Pure Spring. With this procedural history, Orthodox Union seeks summary judgment against Tony Lomakin pursuant to Federal Rules of Civil Procedure 56 and the entry of final judgment by default against Fleet and Pure Spring pursuant to Federal Rules of Civil Procedure 55(b)(2).

**STANDARD OF REVIEW**

**A.     Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment. The party against whom default judgment is requested must have been properly served with process. Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., Civ. A. No. 99-755, 1999 WL 269903, at * 1 (E.D. Pa. Apr. 28, 1999). Before a default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Rule 55(a). See Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1226 (3d Cir. 1993); 10A Wright, Miller, & Kane, Federal Practice and Procedure, § 2682, at 13 (3d ed.1998).

A party seeking default judgment is not entitled to such relief as a matter of right, however, even where the defendant was served with process, and where the default has been noted pursuant to Rule 55(a). See, e.g., Cableco, 1999 WL 269903, at *3 (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)). Rather, a court is "required to

**NOT FOR PUBLICATION**

exercise sound judicial discretion in deciding whether to . . . enter default judgment." Id. Default judgment is generally disfavored because it prevents resolution of a plaintiff's claims on the merits. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

Thus, a district court must apply a six-part test to determine the propriety of entering a default judgment. Poulis v. State Farm & Casualty Co., 747 F.2d 863 (3d Cir.1984). The Poulis factors are (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) the history of noncompliance; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Id. at 868. No single Poulis factor is determinative and dismissal may be appropriate even if some of the factors are not met. See Mindek v. Rigaitti, 964 F.2d 1369, 1373 (3d Cir. 1992).

**B.     Summary Judgment**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. Pollock v Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477

**NOT FOR PUBLICATION**

U.S. 242, 249 (1986). A genuine issue of material fact exists only if the evidence presented would enable a reasonable jury to return a verdict for the non-movant. See Anderson, 477 U.S. at 248. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. See id. at 249.

The non-moving party may not defeat summary judgment by simply resting on the argument that the record contains facts sufficient to support his claims. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1995); O'Donnell v. United States, 891 F.2d 1079, 1082 (3d Cir. 1989). Rather, the non-moving party must go beyond the pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e). Such affidavits must be based "on personal knowledge," establish "such facts which would be admissible," and "show affirmatively that the affiant is competent to testify in all matters stated therein." Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir. 1985); see also 6 J. Moore, W. Taggert & J. Wicker Moore's Federal Practice § 56.22[1] (2d ed. 1985). "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-90 (1968); Gostin v. Nelson, 363 F.2d 371 (3d Cir. 1966). To prevail on a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**NOT FOR PUBLICATION**

## DISCUSSION

**A.     Default Judgment Against Fleet and Pure Spring**

The record indicates that this Court has entered a final judgment against Fleet in a previous action.  See Union Orthodox I, Final Judgment (Jan. 24, 2005).  The Court entered an entry of default against Pure Spring in this action.  See Order Entering Default Against Pure Spring (Nov. 27, 2006).  The record also indicates that Defendants received notice of Orthodox Union's Complaint, discovery requests and various motions, but Defendants failed to respond.  A balancing the Poulis factors favors a grant of final judgment by default.

Defendants were responsible for their own failures.  Defendants: (1) allowed a final judgment by default to be entered against Fleet in the previous case in Orthodox Union I; (2) took repeated actions to frustrate execution on the previous Judgment entered in Orthodox Union I; (3) failed to provide discovery and failed to attend scheduled hearings in this case; and (4) allowed default to be entered against Fleet and Pure Spring by Defendants' failure to retain counsel for these corporate entities.

Orthodox Union has been prejudiced by Defendants' delays.  Orthodox Union served a request for document production at the outset of this case.  Defendants produced documents only after a series of motions filed by Orthodox and a series of hearings held by this Court.  A review of these records shows that Defendants maintained no central or general ledger and kept their records in a slipshod manner.  In pursuing this discovery, Orthodox Union spent a significant

**NOT FOR PUBLICATION**

amount of time and resources before it could ascertain that Defendants lacked documentation to substantiate this matter.

The record in this case and in the previous case indicate a history of noncompliance by defendants Fleet and Pure Spring. Fleet failed to satisfy final judgment entered against it in the previous case. Pure Spring failed to retain counsel as ordered by this Court. Both defendants have failed to respond to a series of motions, including this motion for default judgment. As a result, this Court has entered default against Fleet and Pure Spring. The Court considers their noncompliance as wilful since they received ample notice of this Court's orders and Orthodox Union's Complaint and motion papers.

As Orthodx Union has represented, the document produced by Defendants do not readily substantiate this matter in either parties' favor. The record does not indicate the merits of Fleet's nor Pure Spring's defense. Nevertheless, taking Orthodox Union's allegations as true by virtue of default by Fleet and Pure Spring and balancing the Poulis factors, the Court grants Orthodox Union's motion for final judgment by default against Fleet and Pure Spring.

    **B.**    **Summary Judgment Against Mark Lomakin**

As an initial matter, defendant Tony Lomakin's response to Orthodox Union's motion for summary judgment was due by November 16, 2007. See L. Civ. R. 7.1(d)(2). To date, Defendant has failed to file any response with the Court. Nevertheless, the Court will not grant the entry of summary judgment without considering the merits of Orthodox Union's unopposed motion. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (holding that "a district court should not have granted summary judgment solely on the basis that a motion for summary

**NOT FOR PUBLICATION**

judgment was not opposed."). The Court must review all the evidentiary materials Orthodox Union submitted in support of summary judgment.

Orthodox Union's central argument is that Tony Lomakin is liable to Orthodox Union because Lomakin and Pure Spring are the alter egos of Fleet. This Court has granted final judgment against Fleet in the previous case, Union Orthodox I, and default judgment against Pure Spring in this case. The Court will examine whether Tony Lomakin is liable under an alter-ego theory based on the evidence on the record.

"In order to state a claim for piercing the corporate veil under New Jersey law, a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002). Instrumentality and alter-ago are similar terms. Pearson v. Component Tech. Corp., 247 F.3d 471, 485 n.2 (3d Cir. 2001). The Third Circuit alter-ego test requires a district court to examine the following factors:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

Id. at 484-85. This list is not exhaustive, nor must all of the above factors be present to warrant a finding of alter ego liability. Am. Bell, Inc. v. Fed. of Tele. Workers of Pa., 736 F.2d 879, 886-87 (3d Cir. 1984).

**NOT FOR PUBLICATION**

Orthodox Union submitted a Statement of Undisputed Material Facts with its motion for summary judgment pursuant to L. Civ. R. 56.1 ("Statement of Facts"). About May 6, 1999, Tony Lomakin and Mark Lomakin were two of four founding members of Fleet. See Statement of Facts ¶ 10. Lomakins become sole shareholders of the "new" Fleet after settling a litigation with their co-members. Id. at ¶ 11. The Lomakins directed Fleet to use Orthodox Union's mark on products without Orthodox Union's permission through the use of reproductions, counterfeits, copies and colorable imitations of the OU mark in the sale of its various products. Id. at ¶¶ 17-18. Lomakins directed Fleet to continue its unlawful infringing activities despite Orthodox Union's written demands to cease and desist. Id. at ¶¶ 19-20.

In 2003 or 2004, Tony Lomakin and Mark Lomakin formed or acquired the majority interest in Pure Spring. Id. at ¶ 23. They failed to observe business formalities in the formation and operation of Pure Spring. Id. at ¶ 24. They also failed to maintain basic ledger books of Pure Spring's sales and operations. Id. at ¶ 25. At the direction of Tony and Mark Lomakin, Pure Spring continued the infringing activities with respect to Orthodox Union's OU mark that had been previously carried on through Fleet. Id. at ¶ 26. Tony and Mark Lomakin operated Fleet and Pure Spring as undercapitalized entities and as shields from potential personal liability. Id. at ¶ 27. Lastly, the Court notes that Pure Spring failed to observe corporate formalities by failing to retain counsel in this action.

Defendant Tony Lomakin has not disputed Orthodox Union's statement of facts. The Court concludes there is no evidence in the record from which a reasonable trier of fact can infer that Fleet and Pure Spring are not alter-egos of Tony Lomakin. Accordingly, defendant Tony

**NOT FOR PUBLICATION**

Lomakin is personally liable for Fleet's obligation under this Court's final judgment in the previous case of Orthodox Union I and Pure Spring's obligation under this Court's default judgment in this case. The Court grants Orthodox Union's motion for summary judgment against Tony Lomakin.

    **C.**     **Damages**

There are certain limited situations where a district court can enter a final judgment without requiring further evidence of damages. KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). As example, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default ." KPS Assocs., 318 F.3d at 19. "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." Id. at 19-20 (internal quotations omitted).

Orthodox Union seeks recovery of $100,000 in statutory damages and $17,705.95 in attorneys' fees and costs (plus post-judgment interest) awarded by the Judgment entered in Orthodox Union I against Tony Lomakin, Fleet and Pure Spring, jointly and severally. Orthodox Union also seeks post-judgment interest accruing from the entry of Final Judgment in Orthodox Union I on January 24, 2005. Because Orthodox Union is requesting a sum certain, there is no need to prove damages. Accordingly, the Court grants Orthodox Union's request for damages.

**NOT FOR PUBLICATION**

## CONCLUSION

Union Orthodox's motion for final judgment of default against Fleet and Pure Spring is granted.  Union Orthodox's motion for summary judgment against Tony Lomakin is granted.


January 15, 2008                                          **s/William H. Walls**
                                                          United States Senior District Judge